## HENRY BRACHMANN *v.* LUCIEN B. HALL.

1. The refusal of a judge at special term to set aside the finding of the jury, upon the weight of evidence, is not matter of error.
2. It is discretionary with the judge to grant a new trial for material errors committed by the court, though no exception may have been taken at the time; but his refusal to do so is not the subject of review.
3. When the error is material, and excepted to at the time, the right to a new trial is absolute, and its refusal may be assigned as error.
4. To constitute the error material, it must have been such as that, had it not been committed, the verdict would not have been well warranted.
5. When a witness, called to prove the genuineness of a signature to a note, testifies that he has seen the party write, and is acquainted with his signature, he is a competent witness, although it appeared that he had seen the party write but once, twelve years before, and, on that occasion, sign a receipt; and another witness swears that the habitual signature of the party to *notes* is altogether different from that signed to *receipts*.

GENERAL TERM.—Proceeding in error to reverse a judgment rendered for the defendant in error, by Gholson, J., at the special term of June, A. D. 1857. The action below was brought by Hall, to recover the amount alleged to be due on a promissory note, dated July 25, 1855, made by Charles F. Schmidt, for the sum of $2,000, payable to the order of Henry Brachmann, in one year after date. It was set up, by way of defense, that the note was drawn and indorsed for the accommodation of Schmidt, and when made and indorsed by Brachmann, and by him delivered to Schmidt, it was made and expressed in the note, for the payment of $200 only, and not $2,000; that afterward, without the knowledge and consent of Brachmann, or any mistake in the original note, the same was altered, either by Schmidt or some other person, by changing the word "hundred" into "thousand," and adding a cypher to the figures in the margin thereof, so as to make the note read two thousand dollars, instead of two hundred, as originally indorsed and delivered.

From the bill of exceptions, made part of the record, it

appears that the plaintiff offered in evidence the note sued on, the indorsement of which, by the defendant, was admitted, and rested.   On the part of defendant, Brachmann himself was sworn, and testified that on the day of the date of the note, he was in Highland county; that Schmidt came there with two notes for $200 each, for the purpose of procuring his indorsement theron, bringing with him his own pen and ink; that he, Brachmann, was particular to notice the filling up of the notes, and observed they were for $200 each; that he did indorse them as requested, and on the following morning, at the instance of Schmidt, who averred that he had blotted one of the notes and destroyed it, he, Brachmann, indorsed another for the same amount; that these were given to renew prior notes of a similar character. He further testified that the note in suit was one of these, thus given; that the word hundred was altered into thousand, and a cypher added to the figures in the margin, and pointed out, with some particularity, how the alteration had been made; that he never had indorsed a note, so drawn, for $2,000, nor for any other sum exceeding $800, but only for small sums of $200 or $300, and had been particularly careful never to indorse any notes drawn in blank, by Schmidt, and presented to him for indorsement; that Schmidt had often tried to persuade him, but he had invariably refused.   Other testimony was introduced, going to show the suspicious behavior of Schmidt at the maturity of the note, and an expert was introduced to show how the alleged alteration could be successfully made.

On the part of the defendant, Schmidt was called as a witness, who testified that the note in suit was not one of those referred to by Brachmann as being executed in Highland county, but was made in Cincinnati, at the office of Schmidt, and there indorsed and delivered to him by Brachmann; that when thus made, indorsed, and delivered, it was blank as to the date and amount, and was left with him to be filled up at his own option, though it was not intended to be filled with anything like so large a sum as

$2,000, and in putting in so large a sum, he had violated this understanding; that Brachmann had, on several other occasions, indorsed notes for him in blank, to be filled up for small sums, and that his own behavior, at the maturity of the note, was the result of his sense of shame in having wronged Mr. Brachmann. Some experts were also examined, who testified that, in their opinion, no alteration had been made in the note. The plaintiff then called, as a witness, J. Abraham, who testified as follows:

" I am acquainted with Brachmann's signature; have seen him write. Some twelve years ago, he signed a receipt for a small bill of brandy I bought of him. Do not remember seeing him write on any other occasion. Have seen other papers appearing to have been signed by him. I afterward saw him indorsing a note at Schmidt's office, but did not look at it."

Upon this testimony being given, the defendant's counsel objected that the witness was not qualified and competent to testify as to Brachmann's signature; and that, therefore, the further testimony proposed to be given by the witness, should not be received. The objection was overruled, and defendant took an exception. The witness then proceeded to testify that he had seen two notes in blank, indorsed by Brachmann, four, five, or six months before Schmidt left Cincinnati, one of which Schmidt filled up in witness' office, and witness discounted it. It was for $380 or $400. The plaintiff then called Charles Bodmann as a witness, who testified that he was acquainted with Brachmann's signature; not from having seen him write, but from having seen signatures on notes admitted by him to be genuine; and that he had seen a note in the hands of Schmidt indorsed in blank by Brachmann, and which had been filled up and discounted by witness' father. No exception was taken to this testimony.

The defendant then called Mr. Cathcart as a witness, who testified that he was in business with Brachmann, and had been his confidential clerk for many years, and that his

signature to and upon notes and bills was uniform and peculiar, being back handed, while his signature to receipts and ordinary papers was forward and equally uniform, but that the two are entirely dissimilar. No further testimony was exhibited on either side, except of a corroborative character. The jury found a verdict for the plaintiff, with damages assessed at $1,400, and thereupon the defendant moved for a new trial, on the ground that the verdict was against the law and the evidence; and second, on the ground that the testimony of Abraham and Bodmann was improperly received on the trial. The court overruled the motion, and entered up judgment on the verdict.

*Haines, Todd & Lytle,* and *King, Anderson & Sage,* for plaintiff in error.

*Thomas M. Key,* for defendant in error.

SPENCER, J., delivered the opinion of the court.

In this case, the refusal of the court to grant a new trial, and the improper receipt of the testimony of Abraham and Bodmann upon the trial, are assigned as matters of error.

I. So far as the refusal of the court to grant a new trial is concerned, it is not pretended that, if the facts proven on the part of the plaintiff are true, the verdict is contrary to the law of the case. And whether these facts were sufficiently proven or not, was the peculiar province of the jury to decide. Having passed on them to the satisfaction of the judge, at special term, we are not authorized, on error, to review their decision and set it aside. The refusal of the court to set aside the finding of the jury, upon the weight of evidence, is not matter of error; 6 Ohio, 456, *Webb* v. *Pro. Ins. Co.;* 4 Ohio St. 566, *McGatrick* v. *Wason.*

As to the alleged errors committed on the trial, it does not appear from the bill of exceptions that any objection was made to the testimony of Bodmann, and certainly no exception was taken to the action of the court in receiving it. Section 297 of the code, which makes provision for the granting of new trials, declares that "a new trial shall be granted, on the applica-

tion of the party aggrieved, for any of the following causes, affecting materially the substantial rights of such party;" and among the causes thus enumerated is the following: " 8. Error of law occurring at the trial, and excepted to by the party making the application." Now, we have no doubt that, in a proper case, a new trial may be granted, in the sound discretion of the court, for a material error committed by the court, to the prejudice of the party aggrieved, although no exception may have been taken at the time. But in such cases, the matter is addressed to the sound discretion of the court, which must decide for itself whether substantial justice has been done or not, and whose action in the premises is not the subject of review. But where the alleged error was excepted to on the trial, and materially affected substantial rights, the party injured may of right demand a new trial, and, should it be refused, such refusal may be assigned as error. To warrant the assignment of error, in such cases, two things must concur: first, the error must materially affect a substantial right; and secondly, it must have been excepted to when committed. To constitute the error material, in such cases, it must have been such, in our opinion, as that had it not been committed, the verdict would not have been well warranted. Now, in the present case, if the verdict of the jury was proper at all, it might as well stand independent of the testimony objected to, as upon it. That testimony did not apply to the issue in the case, but to a collateral fact; the execution, not of the note in controversy, but of other notes in blank, by the defendant. And whether such notes had been executed or not, still the plaintiff was not entitled to a recovery here without satisfactory proof that his note had a valid existence. There was no error, therefore, in the refusal of the court to grant a new trial in the case.

II. The other assignment of error is, that the court erred in overruling the defendant's objection to the testimony of Bodmann and Abraham on the trial. The ground of error thus presented is *stricti juris;* and, if well taken, must prevail whether substantial justice has been done by the verdict

or not.  So far as the testimony of Bodmann is concerned, we have already seen that no exception was taken to it; and even if it had been improperly received, which we do not pretend to intimate, the matter can not now be assigned for error.  Then as to the testimony of Abraham, it will be observed that no objection was made to the propriety of proving the fact which he was called upon to establish; that is, that he had seen notes made by Schmidt and indorsed in blank by Brachmann, and had himself discounted one such note.  But the objection was, that the witness had not competent knowledge of Brachmann's handwriting to identify it, and therefore could not properly state that the notes he saw, or the one he discounted, had Brachmann's indorsement upon them.  As one member of the court, I am prepared to say that it was not necessary for the witness to have known the handwriting of Brachmann to the papers referred to, to render his testimony competent if proper at all.  The fact sought to be shown was, not the handwriting of Brachmann, but what was his course of business in reference to the issuing of blank indorsements; and the circumstance that such indorsements, purporting to be his, were exhibited and dealt upon in the market as his, would be proper evidence to show the fact.  Aside from this, and assuming that it was necessary for the witness to have had a knowledge of Brachmann's handwriting to render his testimony proper, we are all clearly of opinion that a sufficient foundation was laid, in the preliminary examination of the witness, for the reception of such testimony.  His answer on the examination in chief was emphatic: "I am acquainted with Brachmann's signature.  I have seen him write."  On cross-examination, he said: "Some twelve years ago, he signed a receipt for a small bill of brandy.  I do not remember seeing him write on any other occasion.  I have seen other papers appearing to have been signed by him."  The knowledge thus acquired by the witness may have been, and probably was, very imperfect; or, on the other hand, it may have been quite reliable.  This depends

upon the intelligence and capacity of the witness, and the impression made upon his mind. Some men may receive a more vivid and lasting impression from the examination of a single signature than others receive from a large number. Some, too, may retain the impression thus received after a lapse of years, while in others it would be obliterated after a lapse of days. In such cases, the law has fixed no limits to the measure of human capacity. But it does require: 1st. That the witness should have had opportunity of forming an acquaintance with the party's handwriting; and, 2d. That the acquaintance should be such as to enable the witness to express a positive belief on the subject. Here the witness expressed confidence in his knowledge of the defendant's signature; and, as to his opportunity of judging, had seen him write his name at least once on a previous occasion. That once having seen a person write, is sufficient to render the testimony admissible, is laid down in all the elementary books, and in many adjudged cases, while not an authority can be found against it. See 2 Phill. Ev. 248, note 255, p. 475, Cowen & Hills' notes; 4 Esp. 37, *Garrells* v. *Alexander;* 2 Starkie, N. P. C. 164, *Powell* v. *Ford;* 1 Moody & Malk. 39, *Lewis* v. *Sapio*, etc. The force and extent of the rule on this subject is well expressed by Phillipps, thus: "A witness may therefore be asked whether he has seen a particular person write, and afterward whether he believes the paper in dispute to be his hand-writing." "This kind of evidence, like all probable evidence, admits of every possible degree, from the lowest presumption to the highest moral certainty. It may be so weak as to be utterly unsafe to act upon, or so strong, as in the mind of any reasonable man, to produce conviction. The witness may have been in the constant habit of seeing the person write, day after day for years together, etc., or it may be found that he may have seen him write only a few words, many years ago, or perhaps only once; or the specimens which he saw may have been slight and imperfect, made in a hurry, at distant intervals, or from some other cause, were not the fair

35

average specimens of his general character or style of writing, but deviations from the common form ; in which cases, the impression on the mind of the witness would be imperfect, faint, and inaccurate. But whatever degree of weight his testimony may deserve, which is a question exclusively for the jury, it is an established rule that if he has seen the person write, he will be competent to speak to his hand-writing ;" citing 1 Burr. 644, *Rex* v. *Dr. Hensey;* 8 Ves. 438, 474, *Eagleton* v. *Kingston;* and 4 St. Trials 446, 447, *Lord Preston's* case ; 6 St. Trials 70, *Francia's* case, and Ib. 275, *Layer's* case. Then, again, as to lapse of time, on page 273, Phillipps says, with respect to the interval of time " that has elapsed since the witness saw the party write, that is a cir-cumstance not to exclude him from giving evidence, but to be left, with all the other circumstances of the case, to the consideration of the jury ;" citing 1 Bl. 384, *Gold* v. *Jones.*

While the general rule, thus laid down, is not denied by one of the counsel for the plaintiff in error, it is insisted by him, that it can not apply in the present case, since it is shown by the testimony of Cathcart that the uniform habit of Brachmann was to make his signature to notes different from that to receipts, and therefore the witness, who had only seen Brachmann's signature to a receipt, could not have known his signature to a note. This is a clear *non sequitur,* since, although the form of the signature may be different, the character of the writing in each may be the same ; and we have already seen that however imperfect the character may be, it is sufficient to enable the witness to testify. But further than this, it is but an arraying of one witness against another ; and we are not required to give absolute credence to the one, and refuse any credence to the other. For, to reject the evidence altogether, we must not only assume that Cathcart has testified with entire truth (which we are certainly prepared to allow) as to Brachmann's cus-tom in affixing different signatures to different kinds of papers, but we must assume that Brachmann followed this custom in the particular instances as to which the witness

testified; and we must still further assume .(what is not proven) that the character of these signatures was so essentially, different, as that an individual, acquainted with the one, could not form a correct opinion as to the genuineness of the other, and that, too, when the witness has testified to his ability to form such a judgment.

In 2 Starkie, N. P. C. 164, the case of *Powell* v. *Ford*, cited by plaintiff's counsel, has no application to the one before us. There it was held at *nisi prius*, by Lord Ellenborough, that a witness, who had seen defendant write his name with the initials of his Christian name, was not competent to prove his signature containing the Christian and surname in full, because the witness, by his own showing—not by the testimony of other witnesses—had not sufficient knowledge of the full or entire signature. Here, however, there is nothing in the witness' testimony to show his want of capacity to form a correct judgment. If that decision, however, were in point, it would be enough to say that it was but a *nisi prius* decision, and when subsequently quoted, 1 Moody & Malk. 39, *Lewis* v. *Sapio*, it was said by Abbott, C. J.: "I will not abide by any such decision as that. The witness has seen the defendant write his surname. He believes the surname, in the defendant's signature on the bill, is written by him. It is quite enough." There can be little difficulty in deciding between the authority of these cases. If the witness could swear to the defendant's surname, it was of no consequence about the Christian name.

Upon the whole case, we find no error in this record; and the judgment will therefore be affirmed with costs, but without penalty.

Judgment affirmed.